IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KATHLEEN DYER, an individual

      Plaintiff,

vs.

SOUTHWEST OREGON COMMUNITY COLLEGE, a municipal corporation and CODY YEAGER, personal capacity,

      Defendants.

Case No. 6:16-cv-02261-AA
**OPINION AND ORDER**

AIKEN, District Judge:

In this wrongful discharge of employment case, plaintiff Kathleen Dyer has brought suit against defendants, Southwest Oregon Community College ("SWOCC"), a municipal corporation, as well as Cody Yeager, Dean of Career and Technical Education at SWOCC, in her personal capacity. The Court previously granted in part and denied in part defendants' motion for summary judgment. Doc. 33. Plaintiff now moves for partial summary judgement on her first amendment retaliation claims. Doc. 42. For the reasons set forth below, the motion is DENIED.

/ / /

Page 1 – OPINION AND ORDER

## BACKGROUND

Much of the background of this case has already been discussed and examined in the Court's previous Opinion and Order. Doc. 33 at *2-13. As such, the Court focuses on the facts which are still relevant to the narrow issues in this motion.

Beginning in December 2014, plaintiff was employed as a full-time criminal justice instructor at SWOCC. Plaintiff claims that she was terminated by SWOCC in retaliation for pro bono legal representation of six SWOCC students in a criminal matter and successful cross-examination of the citing police officers at trial that lead to the dismissal of the charges against the students based on violations of the Fourth Amendment.

On March 8, 2016, Yeager issued a Notice of Concern to plaintiff via email on a day when plaintiff was out of her office. The Notice elaborated two complaints against plaintiff: (1) use of foul language, and (2) plaintiff's telephone call to Paul Frasier, an adjunct instructor at SWOCC and the Coos County District Attorney, regarding a student who had come to plaintiff looking for help navigating his criminal charges. According to Frasier, plaintiff called him multiple times and left voicemails asking him to "look into a case involving one of her students." Reese Dec. Ex. 5. Frasier interpreted the plaintiff's phone calls as requests to intervene in the student's criminal case. Plaintiff also called Chris Chapanar, another adjunct criminal justice instructor and a Coos Bay Police Department Captain, to ask him if criminal charges had been filed.

Later in March 2016, plaintiff attended a scheduled meeting regarding the Notice of with Yeager and SWOCC HR Director Matt Gilroy. When plaintiff learned that Frasier had submitted the complaints about her, she stated that Frasier held a personal vendetta against her and was attempting to get her fired because he did not like being assigned the classes he currently taught and he wanted her job as the SWOCC's sole full-time criminal justice professor. *Id* at Ex. 8; Ex 12, 2; Ex. 13, 1. Plaintiff reiterated her belief that Frasier wanted her job in an email to the administration a month later stating, "[s]o why would Mr. Frasier accuse me of such serious allegations? The bottom line is that he wants my job." *Id.* Ex. 12, 2. Yeager disagreed and was allegedly concerned about plaintiff's statements given the importance of full-time faculty having good working relationships with part-time faculty. *Id.* at Ex. 13, 1.

The day after the meeting, Gilroy sent an email to plaintiff in which he mentioned her comments that Frasier had a personal vendetta against her. Gilroy reminded plaintiff to treat all part-time faculty members fairly and equally. Yeager sent an email to the administration at the SWOCC recapping the meeting and expressing her concern that plaintiff was hostile regarding the issues identified by Yeager. In that email, Yeager stated that she had tried to discuss inappropriate remarks that plaintiff had made about Frasier's religious beliefs. *Id.* Apparently, these remarks allegedly continued. In an August email to Yeager, Frasier mentions another comment that plaintiff made about his religion when plaintiff disparagingly referred to Frasier as a "good Mormon boy". Fagan Decl. Ex. 10, 23.

Page 3 – OPINION AND ORDER

On May 24, 2016, SWOCC President Patricia Scott had a meeting with Frasier, Chapanar, and a police chief. Reese Decl. Ex. 1, 3. During this meeting the three men expressed their concerns about the plaintiff's "ability to build relationship[s]" especially with the advisory committee members. *Id*. at 4-5. Frasier, Chapanar, and the police chief made it clear to President Scott that "they were not going to be interested in working with the college in the future if [it] continued to employ her…" *Id*. at 7-8.

Plaintiff received a Notice of Investigatory Meeting from HR Director Gilroy, on June 3, 2016 alerting plaintiff that SWOCC was considering dismissing her from her position. *Id.* Ex. 19, 1. The letter stated that "[t]he basis of this proposed action stems from the College's concerns regarding your violation of College directives and unprofessional conduct in violation of the College's Code of Conduct." *Id*. The letter further announced a "due process, pre-termination meeting" scheduled for June 7. *Id*. Plaintiff attended the pre-termination hearing on June 7, as scheduled.

On June 7, 2016 plaintiff received a Notice of Termination. The Notice of Termination alleged two counts upon which plaintiff's termination was based. First, the Notice alleged insubordination pertaining to plaintiff's representation of the six SWOCC students. Second, the Notice alleged plaintiff made an unauthorized use of employment time and SWOCC resources when she called Frasier from her SWOCC office phone in February 2016 during work hours regarding a student who had approached her about legal representation. *Id*. As part of the second count, the Notice also alleged that

Page 4 – OPINION AND ORDER

> in addition to your phone message to Paul Frasier, Chris Chapanar, a Coos County Police Captain and part-time instructor expressed concern over a similar phone call that you made to him… Both Mr. Frasier and Mr. Chapanar felt that these respective phone calls by you were inappropriate, as you work with them in your capacity as an instructor at this College… Additionally, these phone calls have led to a deterioration of relationships with local law enforcement agencies and with part-time faculty members.

Fagan Decl. Ex. 3, 33; Reese Decl. Ex. 4, 2. Additionally, the Notice also specified that "the College has determined that your conduct demonstrates a continued pattern of unprofessional conduct, at times in violation of specific directive from your supervisors." *Id*.

Plaintiff subsequently filed the present complaint. Defendants moved for partial summary judgment against plaintiff's claims Eight through Twelve. The Court denied defendant's motion for summary judgment in part, as to the plaintiff's First Amendment retaliation claims, and granted in part as to plaintiff's Fourteenth Amendment property interest violation claim. The Court also ruled that plaintiff's eighth claims for relief, First Amendment Retaliation based on freedom of speech and tenth claim for relief, Frist Amendment Retaliation based on freedom of association should be analyzed as a single hybrid claim. Plaintiff voluntarily dismissed claims Nine and Twelve. After parties were unable to come to a mutual resolution of this case, plaintiff was granted leave to file the present motion.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

issue of material fact. *Id.*; *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* The nonmoving party must set forth specific facts showing that there is a genuine issue for trial by citing particular parts of materials in the record. FRCP 56(c). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving parties favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Therefore, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings several claims against defendants, alleging retaliation for and violation of her constitutional rights pursuant to 42 U.S.C. § 1983. Defendants do not challenge that they acted under color of state law in terminating plaintiff's employment.

Plaintiff moves for summary judgment as to her hybrid First Amendment retaliation claims, arguing that: (I) plaintiff's termination was not motivated by legitimate administrative interests, and even if it was, that SWOCC's legitimate administrative interests do not outweigh plaintiff's First Amendment rights and (II) that SWOCC would not have terminated her even absent her protected speech.

In determining whether a public employee has suffered retaliation for asserting her First Amendment rights, courts must determine (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Step four is a "mixed question of law and fact" and step five is purely a question of fact. *Id*. at 1071.

The Court has already found that plaintiff has satisfied step one, two, and three of the *Eng* analysis. Doc. 33. Defendants acknowledge the Court's previous ruling but maintain their positions from the previous summary judgment motion. In so far as they incorporate previous arguments regarding the first three *Eng* factors, the Court relies on the reasoning set forth in its previous order. In considering plaintiff's motion, the Court, like defendants, shall focus on the remaining two factors in dispute: step four, the adequate justification balancing test, and step five, the but-for causation analysis.

I.   *Adequate Justification*

The fourth step is the heart of the First Amendment retaliation analysis and represents the *Pickering* balancing test in application. At this step, the burden shifts to an employer defendant, and courts must determine whether the public employer

Page 7 – OPINION AND ORDER

had an adequate justification for treating the employee differently from other members of the public. *Eng,* 552 F.3d at 1071-72; *Garcetti v. Cabellos*, 547 U.S. 410, 418 (2006). Thus, the crucial question is whether the public employer's "legitimate administrative interests outweigh the employee's First Amendment rights." *Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir. 2004).

The Supreme Court has observed that, public employers have a legitimate "interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick v. Myers,* 461 U.S. 138, 150 (noting that "'the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs'" (quoting *Arnett v. Kennedy,* 416 U.S. 134, 168 (1974)). "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 151. Though "[a] government entity has broader discretion to restrict speech when it acts in its role as employer [than when it acts in its role as a sovereign] ... the restriction it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti,* 547 U.S. at 418. "So long as employees are speaking as citizens about an issue of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.*

At the same time, the Supreme Court has observed that, "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti,* 547 U.S. at 418. The Court has further

Page 8 – OPINION AND ORDER

explained that the value of public employees' expression reaches beyond the individual rights of a speaker, to the benefits that accrue to society at large when well informed public employees participate in civic processes and dialogue. *Id.* at 419. Thus, it is the courts' "responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." *Connick,* 461 U.S. at 147.

The Ninth Circuit has articulated that "[a] state's burden in justifying a decision to discharge an employee varies depending upon the nature of the employee's expression." *Rendish v. City of Tacoma,* 123 F.3d 1216, 1224 (9th Cir. 1997).

> Application of this balancing test entails a factual inquiry into such matters as whether the speech (i) impairs discipline or control by superiors, (ii) disrupts coworker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operation of the office.

*Hyland,* 972 F.2d at 1139 (citations omitted). A disruption purportedly caused by an employee's speech must be "actual, material and substantial," not "imagined." *Id.* at 1140; *Moran v. Washington,* 147 F.3d 839, 846 (9th Cir. 1998). However, "reasonable predictions of disruption' are sufficient" bases upon which public employers may remove employees. *Brewster v. Bd. of Educ.*, 149 F.3d 971, 979 (*quoting Waters v. Churchill,* 511 U.S. 661 (1994) (plurality opinion)). The Supreme Court has further "caution[ed] that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Connick,* 461 U.S. at 152.

In their motion for summary judgment, defendants asserted that plaintiff's First Amendment rights were outweighed by SWOCC's interest in maintaining a

Page 9 – OPINION AND ORDER

cooperative relationship with the local criminal justice community. Defs.' Mot. Part. Summ. J. at 10. Defendants alleged that plaintiff's representation of SWOCC students disrupted a close working relationship between law enforcement and SWOCC and jeopardized the trust between the College's Criminal Justice program and the local law enforcement agencies. *Id*. The Court held that defendants had not met their burden in establishing that the the relationship between SWOCC and the local enforcement community was not the type of close internal working relationship referred to in *Hyland*.

In response to plaintiff's motion for summary judgment, defendants contend that plaintiff's representation of SWOCC students was outweighed by SWOCC's interests in maintaining harmonious co-worker relationships with the criminal justice adjunct professors and a cooperative relationship with local community partners. Defendants allege that plaintiff's speech and association disrupted co-worker relations, eroded a close working relationship premised in personal loyalty and confidentiality, and interfered with plaintiff's performance of her duties.

Plaintiff argues that her relationship with adjunct professors Frasier and Chapanar did not amount to a co-worker relationship. Further, plaintiff contends that even if her relationship with adjunct faculty did qualify, her representation failed to rise to the level of "disruption" because it was not targeted at the adjunct professors and because the relationships were strained months before her representation. The Court finds no support for plaintiff's first contention. While it may be true that most First Amendment retaliation cases involve speech directed at

Page 10 – OPINION AND ORDER

a co-worker, no rule limits the application of *Pickering* only to speech directed at co-workers.

The current record is unclear about the extent of plaintiff's working relationship with the other adjunct professors and faculty in SWOCC's criminal justice program. Furthermore, there is no explanation of plaintiff's duties as a criminal justice instructor beyond her general responsibilities of creating an advisory committee, updating curriculum, advising students, and working with part-time faculty. Defendants argue that plaintiff's colleagues had expressed concerns about her prior phone calls to them regarding the charges against the students plaintiff represented. They apparently viewed this as plaintiff asking for favors based on their professional relationship. Indeed, after the trial and subsequent "chief meeting" where the trial was discussed, both adjunct instructors informed President Scott that they would not continue working for SWOCC if plaintiff was employed there. Plaintiff essentially argues that these actions were retaliatory after her clients prevailed at trial. She notes that here calls prior to the trial were merely meant to gather information. However, at a minimum, this is an issue of disputed fact. Accordingly, the Court cannot rule as a matter of law on this step of the *Eng* analysis. Rather, the record would benefit from further development to aid a fact-finder in making a final determination.

II.   *But-For Causation*

When a public employer fails to demonstrate an adequate justification outweighing an employee's First Amendment rights, courts engage in the fifth and

Page 11 – OPINION AND ORDER

final step of the free speech retaliation analysis. *Eng,* 552 F.3d at 1072. The inquiry at this step is whether a public employer would have taken the adverse employment action against a plaintiff-employee even absent the protected speech; in other words, a public employer "may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action." *Id.* citing *Mt. Healthy City School Dist. Ed. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). This determination is a question of fact. *Eng,* 552 F.3d at 1072.

The step-five inquiry is related to the inquiry at step three, which asks whether a plaintiff employee's protected speech was a substantial or motivating factor in the adverse employment action. *Id.* The step-five inquiry is distinct in that a fact finder must determine whether the adverse employment action was also based on speech that was not protected and whether the employer would have taken the same action based purely on that unprotected speech. *Id.* (citing *Knickerbocker v. City of Stockton,* 81 F.3d 907, 911 (9th Cir. 1996)).

Defendants contend that plaintiff would have been terminated for reasons other than her protected speech. In addition to her representation of the six SWOCC students, the Notice of Termination plaintiff received also cited a phone call made to Frasier and "a continued pattern of unprofessional conduct" as reasons for her termination. Reese Decl. Ex. 4, 1-2. In two separate emails from Frasier to Yeager, Frasier stated his concerns about plaintiff calling him or leaving voicemails asking Frasier to "look into a case involving one of her students." *Id.* at Ex. 5 (doc. 47 at 47); *see also* Ex. 7. In a different email, Frasier mentions that another adjunct professor,

Page 12 – OPINION AND ORDER

Chapanar, had also received phone calls from plaintiff asking Chapanar to "intervene in the case." *Id*. at Ex. 6. SWOCC felt that these phone calls were inappropriate, and in violation of SWOCC's standards and policies.

Defendants further argue that not only did the phone calls violate SWOCC policy, they also "led to a deterioration of relationships with … part time faculty members." *Id*. at Ex. 4, 1-2. Defendants also contend that plaintiff would have been terminated regardless of her speech because of her inability to foster professional relationships with other faculty members, specifically with adjunct criminal justice professors Frasier and Chapanar, as well as her continued use of foul language. *Id*. at Ex. 1, 3-4.

Both professors articulated to President Scott that they could no longer work with plaintiff, or with the college if the plaintiff remained. *Id*. at 7-8. Scott's testimony suggests that the professors' refusal to work with plaintiff was motivated by plaintiff's phone calls, in addition to her representation of SWOCC students. However, even disregarding Scott's deposition testimony, there is other evidence in the record which could support SWOCC's termination of plaintiff because of her inability to foster a professional relationship with Frasier and others.

In emails from plaintiff to her supervisors, plaintiff admits that she had a hostile relationship with Frasier, stating that Frasier lied about plaintiff's inappropriate phone calls in an attempt to secure plaintiff's job. *Id*. Ex. 12, 2. Further, Frasier complained in an email to Yeager that plaintiff had made inappropriate remarks about Frasier's religion. Yeager also mentions plaintiff's

Page 13 – OPINION AND ORDER

adverse relationship with Frasier and plaintiff's inappropriate religious comments in an email.

Construing all facts in favor of defendants, a factfinder could determine that plaintiff's termination was based on reasons other than speech that was protected by the First Amendment. An employer, even a government employer, may terminate an employee who cannot foster or maintain professional relationships with co-workers. *See Brewster v. Bd. of Educ.*, 149 F.3d at 981-982; *Connick*, 461 U.S. at 151. Accordingly, the Court finds that there are genuine issues of material fact as to whether SWOCC would have taken adverse employment action against plaintiff but for plaintiff's representation of SWOCC students.

## CONCLUSION

For the reasons set forth herein, plaintiff's motion for partial summary judgment (Doc. 42) is DENIED.

IT IS SO ORDERED.

Dated this 17th day of December, 2020.

                                               /s/Ann Aiken
                                                 Ann Aiken
                                 United States District Judge